UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| Catamount Radiology, P.C., and<br>Scott D. Smith, M.D., | : | |
| Plaintiffs, | : | |
| v. | : | Case No. 1:14-cv-213 |
| Yvette Bailey, M.D., | : | |
| Defendant. | : | |
| | : | |
| Yvette Bailey, M.D., | : | |
| Counterclaim Plaintiff<br>And Third Party Plaintiff | : | |
| v. | : | |
| Scott D. Smith, M.D.; Catamount<br>Radiology, P.C.; Joseph Woodin;<br>Rebecca O'Berry; and Gifford Medical<br>Center, Inc., | : | |
| Counterclaim Defendants<br>And Third Party Defendants. | : | |

MEMORANDUM AND ORDER ON MOTION TO DISQUALIFY
(Doc. 40)

I.   Introduction and Background[1]

This case arises from a dispute between medical service professionals.  The Court assumes familiarity with the facts and background of the lawsuit, which are summarized in Catamount Radiology, P.C. v. Bailey, No. 1:14-cv-213, 2015 WL 3795028 (D. Vt. June 18, 2015).  In that Order,

---

[1] The facts set forth in this opinion are as alleged in the pleadings and do not represent findings of the Court.

the Court granted in part and denied in part Plaintiff and Counterclaim Defendants' Motions for Judgment on the Pleadings. (Doc. 47.) The present Motion arises from recent developments in the discovery process.

On June 4, 2015, the parties convened in Burlington, Vermont for the deposition of Defendant/Counterclaim Plaintiff Dr. Yvette Bailey. Stephen Ellis -- counsel for Catamount Radiology, P.C. ("Catamount") and Dr. Scott Smith -- questioned Bailey from approximately 10 a.m. until all counsel agreed to suspend the deposition at 5:30 p.m. The next morning the parties assembled to resume. While attending to preliminaries, David Bond -- Bailey's counsel -- announced his concern that, after "reviewing the documents . . . with fresh eyes," he believed Ellis was "a necessary witness . . . in the critical issue as to whether Dr. Bailey provided the supposedly required notice of her intent to purchase her stock certificates." (Doc. 43-1, at 4-5.) Bond expressed his intent to move the Court to disqualify Ellis, and in response Ellis concluded he did not "have any choice but to suspend the deposition and allow Mr. Bond to file the motion that he's threatened to file." (Id. at 7.) Counsel for Woodin, O'Berry, and Gifford agreed they could not continue either given the circumstances. (Id.) On June 8, 2015, Bailey moved to disqualify Ellis. (Doc. 40.) Catamount and Smith responded in opposition (Doc. 43) and Bailey replied (Doc. 50).

II.     Discussion

Bailey seeks to disqualify Ellis from representing Catamount and Smith under the advocate-witness rule, which holds "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" unless the testimony relates to an uncontested issue, the testimony relates to "the nature or value of legal services rendered in the case," or disqualification would work a

"substantial hardship" on the client. Vt. R. Prof. Conduct 3.7.[2] Bailey takes the position Catamount and Smith are estopped from arguing Bailey's failure to purchase shares in Catamount precluded her from becoming a shareholder because they lulled her into believing she had already become a shareholder. She contends Ellis, now representing Catamount and Smith, made representations to Bailey through her attorney relevant to this estoppel defense in June 2014.[3]

Smith hired Ellis to represent him sometime in June 2014 in response to Bailey's enlistment of attorney Kenneth Romer, her husband. Romer and Ellis exchanged several emails attempting to resolve the dispute between Bailey and Smith. In a June 12, 2014 email, Romer asserted Bailey was a "50% owner" of Catamount and expressed concern Smith disagreed with this contention. (Doc. 40-4, at 2, 4). On June 12, 2014, Ellis responded by asserting he "expressly and repeatedly declined to take any position on the nature of Dr. Bailey's relationship with [Catamount] or any other substantive issue." (Doc. 40-5, at 2.) Then, on June 18, 2014, Ellis submitted a position statement on behalf of Smith and Catamount asserting "Dr. Smith agrees that the Shareholders Agreement contemplates that he and Dr. Bailey will each purchase 10 shares of stock at $1600 per share,

---

[2] Because "decisions on disqualification motions often benefit from guidance offered by . . . state disciplinary rules," the Court looks to Vermont's advocate-witness rule. Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005).

[3] It is particularly relevant that Bailey claims estoppel -- she asserts estoppel as an affirmative defense in her Answer (Doc. 5, at 7) -- because Ellis made the representations at issue as part of otherwise inadmissible settlement negotiations. Federal Rule of Evidence 408 prohibits the use of any "conduct or statement made during compromise negotiations about the claim . . . to prove or disprove the validity or amount of a disputed claim," but a court may make an exception when evidence is to be used "for another purpose." Fed. R. Evid. 408. Courts have found an estoppel claim falls into this "another purpose" exception. See, e.g., Starter Corp. v. Converse, Inc., 170 F.3d 286, 294 (2d Cir. 1999) (upholding district court's decision to admit settlement negotiation evidence to prove estoppel claims). Accordingly, Rule 408 does not bar use of Ellis's exchanges with Romer for the limited purpose of arguing estoppel. Catamount and Smith's citation to Pierce v. F.R. Tripler & Co., 955 F.2d 820, 828 (2d Cir. 1992), which details the synergy between Fed. R. Evid. 408 and the advocate-witness rule, is inapposite because it offers no helpful guidance on the exception in Rule 408(b). Whether Bailey can actually show estoppel is an issue for summary judgment or trial.

provide 50% coverage and receive equal compensation and benefits, and he is prepared to honor this agreement." (Doc. 40-6, at 9.) Ellis then warned that Bailey had "never notified Dr. Smith that she wishes to purchase Shares in the Company, pursuant to ¶ 4.2 of the Shareholders Agreement." (Id. at 10.) On June 30, 2014, Romer responded by asserting "accounting adjustments for the 'buy in', whether or not such stock is issued, can be made at any time during 2014. Certainly Dr. Bailey thinks that it is appropriate to issue said stock when it is practicable, and wishes to do so." (Doc. 40-7, at 2.) The briefing does not indicate Ellis further addressed Romer's response. The gravamen of Bailey's estoppel argument is that by his silence in response to this assertion, Ellis, acting on behalf of Smith, lulled Bailey into believing she had satisfied ¶ 4.2 of the Shareholders' Agreement. See Doc. 40, at 7 (Bailey argues "Attorney Ellis never said or did anything to disabuse Mr. Romer of the idea that Dr. Bailey was already an equal shareholder in Catamount") (emphasis in original).

Bailey believes Ellis must be disqualified under the advocate-witness rule because he is a "necessary witness" at trial on the estoppel issue. First, Bailey argues Ellis's testimony as to contents of phone calls between himself and Romer is necessary for trial. Second, Bailey argues if Ellis is trial counsel, his cross-examination of Romer on these communications would create a risk the jury would treat his questioning and argument as unsworn fact.[4] See, e.g., Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009).

"Motions to disqualify opposing counsel are viewed with disfavor because they impinge on a party's right to employ the counsel of its choice." Shader v. Brattleboro Sav. & Loan Ass'n, No. 5:14-cv-152, 2014 WL 7140612, at *10 (D. Vt. Dec. 12, 2014) (quoting Scantek Med., Inc. v. Sabella,

---

[4] Bailey also argues Ellis cannot purport to represent Catamount in this litigation because she is a 50% shareholder and has not consented to his representation. (Doc. 40, at 10.) The Court has concluded, however, that Bailey never became a shareholder because she never tendered money for the purchase of half the company. (Doc. 47.) Accordingly, Ellis can and does represent Catamount.

4

693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008)).  The right to choose counsel must be balanced against the risk of "harm to the integrity of the judicial system" challenged counsel's participation poses.  Murray, 583 F.3d at 178.  "Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions under the witness-advocate rule."  Id. (quotations omitted).  The advocate-witness rule seeks to alleviate four risks which might taint the underlying trial:

> (1) [T]he lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

Id. (citing Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 282-83 (2d Cir. 2004)).  Guidance on Vermont's witness-advocate rule calls for consideration of the "nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability the lawyer's testimony will conflict with that of other witnesses."  Vt. Prof'l Conduct Rule 3.7 -- Comment [4].

First, Ellis is not a necessary witness.  It appears the only admissible evidence Ellis could provide relevant to estoppel -- and to this case -- relates to the contents of one or two phone conversations between himself and Romer.  Given that Ellis's communications on behalf of Catamount and Smith are largely memorialized in emails, which at points summarize the content of telephone calls,[5] Ellis's testimony is unlikely to add any crucial information and unlikely to contradict

---

[5] For example, a June 16, 2014 email from Romer to Joseph Woodin summarizes a telephone conversation with Ellis: "I could not get any information from Steve Ellis regarding his clients [sic] positions or expectations, except for an inadvertent statement that Dr. Bailey had not purchased stock in Catamount Radiology."  (Doc. 43-6, at 30.)

written evidence.  Bailey has no need to call Ellis as a witness, because Romer can testify to any communications between the two.  See, e.g., Finkel v. Frattarelli Bros., 740 F. Supp. 2d 368, 375 (E.D.N.Y. 2010) ("Where counsel's testimony would be merely cumulative of testimony provided by others, disqualification is not appropriate."); Solow v. Conseco, Inc., No. 06-cv-5988, 2007 WL 1599151, at *4 (S.D.N.Y. June 4, 2007) ("The rule requires that a lawyer's testimony be necessary, not simply that it be the best evidence, and to that end, courts deem a lawyer's testimony necessary one if there [are] no other witnesses to the circumstances at issue) (quotations omitted) (alteration in original); J.G. Ries & Sons, Inc. v. Spectraserv, Inc., 384 N.J. Super. 216, 229-31, 894 A.2d 681, 689 (App. Div. 2006) (holding a letter written by a party's attorney could be admitted through another witness, the recipient, and therefore the attorney was not a necessary witness).

Second, Ellis's participation would not taint the trial.  The only valid reason the Court might consider disqualifying Ellis is if his cross-examination of Romer at trial would blur "the line between argument and evidence."  Murray, 583 F.3d at 178.  If Ellis questioned Romer on the contents of their phone conversations at trial, there would be a risk the jury would construe Ellis's questions as evidence given his firsthand knowledge of those conversations.  See id.  In ruling on a motion to disqualify, however, a circumscribed remedy is preferred.  See United States v. Quest Diagnostics Inc., 734 F.3d 154, 166 (2d Cir. 2013) ("[C]ourts must balance . . . competing concerns by limiting remedies for ethical violations to those necessary to avoid tainting the underlying trial.") (quotations and alterations omitted).  Catamount and Smith chose Ellis as their counsel and he has become intimately familiar with this case over the past year of litigation at their expense.  Therefore, the Court will not disqualify Ellis from representing Catamount and Smith in this matter.  Instead, the Court makes the limited ruling that, at trial, Ellis may not examine Romer concerning any communications between the two of them.  Cf. Air Italy S.p.A. v. Aviation Techs., No. 10-cv-20,

2011 WL 96682, at *5 (E.D.N.Y. Jan. 11, 2011) (allowing challenged counsel to continue representation, but disqualifying him from acting as trial counsel because he was his client's sole representative in negotiating the documents at the heart of the trial).  Ellis was not involved in drafting the agreements underlying this case.  He only became involved in the matter when litigation began.  Barring Ellis from examining Romer on the substance of their communications in June 2014 respects Catamount and Smith's right to select their counsel while ensuring the "line between argument and evidence" is not blurred for the jury.  Murray, 583 F.3d at 178.  As Bailey points out, Ellis is assisted by attorney Jennifer McCave.  Vermont's advocate-witness rule does not prohibit her from examining Romer on these communications at trial.  See Vt. Prof'l Conduct Rule 3.7(a) ("A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by [a conflict of interest].").  Ellis may depose Romer.

Accordingly, the Motion to Disqualify (Doc. 40) is granted in part and denied in part.[6]

---

[6] The Court need not resolve the merits of Bailey's estoppel argument at this time, and declines to do so.

Similarly, whether Bailey's motion to disqualify is untimely is a close issue that the Court need not reach.  "A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion."  Cox v. Am. Cast Iron Pipe Co., 847 F.2d 725, 729 (11th Cir. 1988) (quoting Jackson v. J.C. Penney Co., 521 F. Supp. 1032, 1034-35 (N.D. Ga. 1981)).  Courts have found a party waived its right to seek disqualification of opposing counsel when the movant previously expressly agreed not to file a disqualification motion, Cent. Milk Producers Co-op v. Sentry Food Stores, Inc., 573 F.2d 988, 992 (8th Cir. 1978), the movant objected on the eve of trial after warranting two years previously it would contact opposing counsel if it objected to their representation, Trust Corp. of Mont. v. Piper Aircraft Corp., 701 F.2d 85, 88 (9th Cir. 1983), or there was evidence the movant postponed filing the motion for several months until the eve of trial, Redd v. Shell Oil Co., 518 F.2d 311, 315 (10th Cir. 1975).  This case is not so extreme.  Although the facts forming the basis for Bailey's motion to disqualify have been known since the outset of the litigation, Bond only recognized the applicability of Fed. R. Evid. 408's exception to his client's estoppel defense following Ellis's questioning of Bailey on the June 2014 exchanges between Romer and Ellis.  See Doc. 48-1, ¶¶ 14-17.  The motion to disqualify was filed promptly, trial is well in the future, and there is no inference Bond sought tactical advantage by moving for disqualification when he did.  Cf. Cent. Milk Producers, 573 F.2d at 992 (a litigant may not "delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed.").

III.    Conclusion

The Motion to Disqualify (Doc. 40) is GRANTED to the limited extent that Attorney Stephen Ellis may not cross-examine Kenneth Romer at trial on the subject of any communications between the two of them. The Motion is DENIED in all other respects.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 8th day of July, 2015.

                                /s/ J. Garvan Murtha
                                Honorable J. Garvan Murtha
                                United States District Judge

---

The Court offers one final clarification. Catamount and Smith filed their response shortly before the Court's Order on the Motions for Judgment on the Pleadings (Doc. 47). They hypothesized that "[i]f the Court agrees with [Catamount] that the clear and unambiguous terms of the Shareholders' Agreement required Dr. Bailey to exercise her option to purchase 50% of [Catamount's] shares in order to become a 50% shareholder, and that Dr. Bailey failed to exercise that option, then Mr. Ellis's communications with Mr. Romer are completely immaterial and the remaining discovery will be significantly streamlined." (Doc. 43, at 8.) Although the Court has concluded Bailey did not become a shareholder because she did not purchase shares, Catamount and Smith's contention is misguided. Bailey's estoppel claim is potentially important precisely because she never became a shareholder -- her position is that she would have properly bought shares in Catamount had Smith not misled her about his understanding of the terms of the Shareholders' Agreement.